# In the United States Court of Federal Claims

**OFFICE OF SPECIAL MASTERS**
No. 19-1881V
Filed: July 21, 2023

---

CATHERINE GRACE BOSS,

               Petitioner,

v.

SECRETARY OF HEALTH AND HUMAN SERVICES,

               Respondent.

---

*Paul Green*, Law Office of Paul Green, Pasadena, CA, for petitioner.
*Emily Manoso*, U.S. Department of Justice, Washington, DC, for respondent.

## DECISION REGARDING ATTORNEYS' FEES AND COSTS[1]

On December 11, 2019, petitioner, Catherine Grace Boss, filed a petition under the National Childhood Vaccine Act, 42 U.S.C. § 300aa-10-34 (2012) alleging that she suffered injuries including neurocardiogenic syncope, fatigue, chronic orthostatic tachycardia syndrome ("POTS"), headache, migraines, neck pain, back pain, abdominal pain, and pain disorder as a result of her December 12, 2016 human papillomavirus ("HPV") and influenza ("flu") vaccinations. (ECF No. 1, p. 1.) Following dismissal, petitioner now moves for an award of attorney's fees and costs which respondent opposes, arguing that petitioner lacked a reasonable basis in bringing her petition. (ECF No. 75.)

Petitioner requests attorneys' fees and costs in the amount of $66,510.00, representing $50,885.00 in attorneys' fees and $15,625.00 in attorneys' costs. For the

---

[1] Because this document contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the document will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

1

reasons described below, petitioner's motion is GRANTED and petitioner is awarded attorneys' fees and costs in the reduced amount of $62,739.50.

## I. Procedural History

After filing a Statement of Completion on August 7, 2020, petitioner filed expert reports from Dr. Lawrence Steinman and Dr. Mitchell Miglis in addition to accompanying medical literature.  (ECF Nos. 27-55).  Thereafter a substantial issue arose with regard to petitioner's psychologist's records, which remained outstanding, as well as the redaction of certain other records.  Petitioner indicated that she and her psychologist were concerned that disclosure of the details contained in the mental health treatment records at issue would potentially be harmful to petitioner's mental health.  (ECF No. 56.)

During a Rule 5 conference held on May 31, 2022, I explained to petitioner's counsel that I was persuaded by respondent's contention that unredacted psychology records would be necessary to respondent's defense and would ultimately need to be produced if the case was to continue.  (ECF No. 68.)  Accordingly, I provided petitioner additional guidance pursuant to Vaccine Rule 5 explaining why prior cases alleging HPV vaccine-caused POTS have not been successful and providing petitioner the opportunity to consider whether it is in her best interest to voluntarily dismiss her claim after balancing her concerns regarding production of her psychologist's records and her ultimate likelihood of success.  (*Id.*)

Petitioner filed a motion for a decision dismissing her petition on July 21, 2022.  (ECF No. 71.)  A decision dismissing her petition issued on July 25, 2022.  (ECF No. 72; *see also Boss v. Sec'y of Health & Human Servs.*, No. 19-1881V, 2022 WL 3694875 (Fed. Cl. Spec. Mstr. July 25, 2022).)

Petitioner filed the instant motion for attorneys' fees and costs on August 4, 2022.  (ECF No. 75.)  On August 17, 2022, respondent filed a response opposing an award of attorneys' fees and costs and contesting that there was a reasonable basis for the filing of this petition. (ECF No. 76.)  Petitioner filed a reply on August 24, 2022.  (ECF No. 77.)  Accordingly, petitioner's motion is now ripe for resolution.

## II. Factual History

Petitioner's medical history prior to vaccination was significant for attention deficit hyperactivity disorder (ADHD) from trauma-related symptoms, intermittent headaches, Raynaud's phenomenon, and two episodes of vasovagal syncope at ages 12 and 16.  (Ex. 3, p. 50.)  Petitioner had received prior psychiatric and psychological care.  (Ex. 8.)  Petitioner's pediatrician administered the Gardasil and Fluzone vaccinations on December 12, 2016.  (Ex. 3, p. 50.)  Petitioner was seen for a well child visit on February 16, 2017, and she reported episodes of syncope, vomiting, migraine with visual aura, and intermittent panic attacks.  (Ex. 3, p. 44.)  Petitioner described "continued episodes with syncope" that occurred at "random times" for years.  (*Id.*)  She

was prescribed Focalin XR as a substitute for the Adderall because of concern her fainting issues may be due to the Adderall used to treat her ADHD. Petitioner received her second Gardasil vaccination at this appointment. (Ex. 3, p. 48.)

Shortly thereafter, petitioner met with a clinical psychologist who noted symptoms of ADHD and a general anxiety disorder including panic attacks, daily vomiting, lethargy, dizziness, syncope, and headaches. (Ex. 8, p. 1.) The psychologist noted petitioner was missing a lot of school and activities and experiencing social isolation. (*Id.*) Petitioner returned to her primary care provider for a follow up on March 16, 2017 with abdominal pain and vomiting with nausea. (Ex. 3, p. 40). He noted petitioner "has a significant mood component to her symptoms that would be better cared for by a psychiatrist". (Ex. 3, p. 40.) Petitioner was also referred to a gastroenterologist due to a family history of gastrointestinal issues. (*Id.*)

Petitioner was evaluated by a cardiologist at Children's Hospital of Los Angeles (CHLA) on April 19, 2017. (Ex. 4, p. 92.) The cardiologist noted orthostatic lightheadedness, panic attacks, fatigue, abdominal pains, and syncope 1 to 2 times a week. (Ex. 4, p. 92.) He also noted that petitioner's family "hints at some suppressed trauma" and that petitioner "has a long history of lightheadedness, shakiness, and near syncope, which has resulted in syncope a few times." (Ex. 4, p. 92.) On examination, petitioner's echocardiogram was normal except for a bicuspid aortic valve which did not explain petitioner's symptoms. (Ex. 4, p. 93.) Petitioner's heart rate was 86 bpm supine and 105 on standing with no significant drop in blood pressure. (Ex. 4, p. 93.) Dr. Sullivan believed petitioner's symptoms were consistent with postural orthostatic tachycardia syndrome (POTS) and recommended an increase in fluids and salt. (Ex. 4, p. 94.)

Over the next two years, petitioner continued to seek treatment for her symptoms. She also experienced several seemingly unrelated intercurrent illnesses. (Ex. 3, pp. 9, 23, 31; Ex. 11, pp. 3, 7.) Throughout this period, petitioner's treating physicians extensively questioned the etiology for her symptoms. However, several medical records demonstrate that suspicion of POTS was consistently considered. (Ex. 3, p. 29 (November 6, 2017); Ex. 3, p. 78 (February 26, 2018); Ex. 4, p. 86 (April 17, 2018).) There are also medical records suggesting a psychological etiology for many of petitioner's symptoms, including diagnosis of a pain disorder "associated with psychological and physical factors." (Ex. 4, p. 86; 53-54.)

On October 2, 2019, petitioner presented to Dr. Georgios Hartas, a cardiologist, who diagnosed petitioner with POTS following a tilt table test which showed a thirty-six beats per minute heart rate increase, consistent with a POTS diagnosis. (Ex. 12, pp. 1, 5.) Petitioner did not experience syncope during the tilt table testing; however, the test was ended at 2 minutes due to dizziness, nausea, and blurred vision. (*Id.* at 9.) Dr. Hartas noted that petitioner could not stand more than four minutes. (*Id.* at 5.) Petitioner's recent echocardiogram also raised additional cardiac concerns including mild mitral valve prolapse (MVP) and a bicuspid aortic valve. (*Id.* at 6-7.) He prescribed

midodrine.  (*Id.* at 5.)  Petitioner reported doing well on the midodrine at a follow-up appointment with Dr. Hartas on February 4, 2020.  (*Id.* at 1.)  Petitioner continued to complain of dizziness, headaches, fatigues, and difficulty sleeping.  (*Id.* at 1-3.)

On May 7, 2020, Dr. Marcy (a psychologist) summarized petitioner's treatment history and noted petitioner had slowly improved in the past six months.  (Ex. 8, p. 2.)  She noted physical symptoms continue to be a significant factor in her life.  (*Id.*)  Her persistent symptoms included migraine headaches, fatigue, POTS, and gastroparesis.

### III.     Legal Standard

Petitioners who are denied compensation for their claims brought under the Vaccine Act may still be awarded attorneys' fees and costs "if the special master or court determines that the petition was brought in good faith and there was reasonable basis for the claim for which the petition was brought."  42 U.S.C. § 300aa-15(e)(1); *Cloer v. Sec'y of Health & Human Servs.*, 675 F.3d 1358, 1360-61 (Fed. Cir. 2012).  But even when a claim was brought in good faith and has a reasonable basis, a special master may still deny attorneys' fees.  *See* 42 U.S.C. § 300aa-15(e)(1); *Cloer*, 675 F.3d at 1365.

"Good faith" and "reasonable basis" are two distinct requirements under the Vaccine Act.  *Simmons v. Sec'y of Health & Human Servs.*, 875 F.3d 632, 635 (Fed. Cir. 2017).  Good faith is a subjective inquiry while reasonable basis is an objective inquiry that does not factor subjective views into consideration.  *See James-Cornelius v. Sec'y of Health & Human Servs.*, 984 F.3d 1374, 1379 (Fed. Cir. 2021).  In this case, petitioner's good faith is not challenged, leaving only the question of whether there was a reasonable basis for the filing of the petition.

The evidentiary standard for establishing a reasonable basis as prerequisite to an award of attorneys' fees and costs is lower than the evidentiary standard for being awarded compensation under the Vaccine Act.  To establish a reasonable basis for attorneys' fees, the petitioner need not prove a likelihood of success.  *See Woods v. Sec'y of Health & Human Servs.*, No. 10-377V, 2012 WL 4010485, at *6-7 (Fed. Cl. Spec. Mstr. Aug. 23, 2012).  Instead, the special master considers the totality of the circumstances and evaluates objective evidence that, while amounting to less than a preponderance of evidence, constitutes "more than a mere scintilla" of evidence.  *Cottingham v. Sec'y of Health & Human Servs.*, 971 F.3d 1337, 1344, 1346 (Fed. Cir. 2020); *see also Amankwaa v. Sec'y of Health & Human Servs.*, 138 Fed. Cl. 282, 287 (Fed. Cl. 2018).

Determining what constitutes "more than a mere scintilla" of evidence has been acknowledged to be a "daunting task."  *Cottingham v. Sec'y of Health & Human Servs.*, 154 Fed Cl. 790, 795 (2021).  The required showing has been characterized as "evidence beyond speculation that provides a sufficient basis for a reasonable inference of causation."  *Id.* (quoting *Penley v. McDowell Cnty, Bd. Of Educ.*, 876 F.3d 646, 655 (4th Cir. 2017).) "More than a mere scintilla" of objective evidence supporting causation

can derive from medical records that provide "only circumstantial evidence of causation." *James-Cornelius*, 984 F.3d at 1379-80.

For example, in *James-Cornelius* the Federal Circuit found significance in 1) petitioner's medical records containing a doctor's note questioning whether a vaccine adverse event should be reported, 2) the medical course suggesting a challenge-rechallenge event of petitioner's symptoms becoming worse after additional injections of the vaccine, 3) medical articles hypothesizing that the vaccine can cause the symptoms at issue, and 4) petitioner having suffered some of the same symptoms that were listed in the vaccine's package insert as potential adverse reactions of the vaccine. *James-Cornelius*, 984 F.3d at 1379-80; *see also Cottingham*, 971 F.3d at 1346 (finding that petitioner's medical records showed at minimum circumstantial evidence of causation where petitioner's medical records showed that petitioner received the Gardasil vaccine and subsequently experienced symptoms that were identified in the Gardasil package insert as potential adverse reactions of the vaccine). Nothing in *James Cornelius* suggests the full extent of what may constitute circumstantial evidence, but the four examples of circumstantial evidence in *James-Cornelius* provide some guidance regarding the types of circumstantial evidence that may be considered in determining whether a reasonable basis was established. Conversely, the Federal Circuit also stressed in *James-Cornelius* that an award of attorneys' fees and costs is within the special master's discretion and remanded the case for further proceedings. 984 F.3d at 1381. Accordingly, it is also not the case that the presence of these specific elements of circumstantial evidence necessarily compel a finding that reasonable basis exists.

The Federal Circuit has confirmed that a case can lose its reasonable basis as it proceeds. *Perreira v. Sec'y of Health & Human Servs.,* 33 F.3d 1375, 1376-77 (Fed. Cir. 1994). Counsel has a duty to avoid frivolous litigation and should use "reasoned judgment in determining whether to . . . pursue a claim." *Murphy v. Sec'y of Health & Human Servs.,* 30 Fed. Cl. 60, 62 (1993), *aff'd*, 48 F.3d 1236 (Fed. Cir. 1995). "[T]he [Vaccine] Program's interest in promoting representation in vaccine cases, as contemplated by the attorneys' fees provisions of the statute, must be balanced carefully against the court's examination of the reasonableness of the basis for bringing the vaccine petition." *Turner v. Sec'y of Health & Human Servs.*, No. 99-544V, 2007 WL 4410030, at *11 (Fed. Cl. Spec. Mstr. Nov. 30, 2007). Although counsel has an "ethical obligation to be a zealous advocate," that does not give counsel a "blank check to incur expenses without regard to the merits of [the] claim." *Perreira,* 27 Fed. Cl. 29, 34-35 (1992).

### IV.    Party Contentions

In petitioner's initial motion, petitioner included excerpts from Dr. Steinman and Dr. Miglis' expert reports explaining her underlying claim and their belief about the connection between her alleged autonomic dysfunction and the Gardasil vaccine. Petitioner stated "there can be no doubt that there was a reasonable basis for the

Petition" because she filed two expert reports that concluded she was suffering a vaccine-caused injury. (ECF No. 75, p. 15.)

Respondent, however, disputes that petitioner had a reasonable basis for filing the petition. (ECF No. 76, p. 14.) Respondent contends petitioner has not set forth "more than a scintilla of persuasive and reliable medical evidence in support of causation" and, therefore, there is no reasonable basis for her claim. (*Id.*) Respondent cites multiple HPV/POTS cases in the program that had failed to establish causation under *Althen* prong one well before petitioner filed her petition in December 2019. (ECF No. 76, p. 14-15.). Respondent highlights that in prior program cases Dr. Miglis had not persuaded the court of a connection between the HPV vaccine and POTS. (ECF No. 76, p. 16.) Respondent stresses that the filing of an expert opinion does not in itself guarantee that there was a reasonable basis for filing the petition. (*Id.* at 15.) Respondent notes that in petitioner's own case the undersigned has indicated that "the medical opinions did not provide persuasive evidence supporting a finding of entitlement." (ECF No. 72, p. 3.)

Respondent also suggests many of petitioner's symptoms were "attributable to other causes", underscores the potential relationship between alleged symptoms and psychological conditions documented by medical providers, and stresses that petitioner's experts did not address these issues. (ECF No. 76, p. 18.) Moreover, respondent argues the redactions in petitioner's medical records "make it impossible to assess the significance of the information the redaction obscures." Therefore, petitioner's experts may have relied on incomplete information to assess petitioner's medical history and alleged injury which could lead to inaccuracies. (*Id.* at 16.) Finally, respondent rejects the challenge-rechallenge medical theory relied upon in part by both Dr. Steinman and Dr. Miglis. (*Id.* at 18.)

In reply, petitioner contended that she has established a reasonable basis given the multiple entries in her medical records confirming her POTS diagnosis following administration of Gardasil, two expert reports one of which cited thousands of pages of "supportive peer reviewed scientific evidence", and onset of POTS within a reasonable time frame after vaccination. (ECF 77, pp. 1-2.) She contends Professor Steinman's report satisfies all three *Althen* prongs and that his opinions were not equivocal, citing his affirmative statement that Gardasil "more likely than not" triggered petitioner's POTS. (*Id.* at 3.) In response to the history of HPV/POTS cases in the program, petitioner indicates when she filed the petition, before *Balasco* and *E.S.*, there were only a few unsuccessful cases of that nature at the time and, therefore, there was reasonable basis for her claim upon filing. (*Id.* at 4). Petitioner also notes that in every unsuccessful HPV/POTS case respondent cited in their reply, the court held that petitioner had reasonable basis and awarded attorneys' fees. (*Id.*). Additionally, petitioner dismissed her case when the court communicated it would "not be receptive to the expert evidence moving forward." (*Id.* at 5.)

6

### V.  Reasonable Basis Determination

As respondent stresses in his motion response, I did advise petitioner during the Rule 5 conference that I did not find her experts' opinions persuasive.  (ECF No. 68.)  This was also repeated in the decision dismissing this case.  (ECF No. 72; *see also Boss*, 2022 WL 3694875.)  However, this is not dispositive with respect to the question of whether there was a reasonable basis for the filing of her petition given the differing evidentiary standards.[2]  This is not the first case to allege that the HPV vaccine caused POTS or a similar a constellation of symptoms.  While these cases have resulted in dismissal, determining whether there was a reasonable basis for filing has been less clear cut given that there is literature available that purports to link these symptoms to the HPV vaccine.  As discussed in the parties' motion papers, while these cases have failed to provide preponderant evidence of vaccine causation, they have by and large presented sufficient evidence to demonstrate a reasonable basis sufficient for an award of attorneys' fees and costs.[3]

More recently, the Chief Special Master has begun warning petitioners that the by now well-established pattern of failure for these types of cases puts future petitioners on notice that the reasonableness of future petitions is not assured.  *E.S. v. Sec'y of Health & Human Servs.*, No. 17-480V, 2021 WL 5816006, at *5 (Fed. Cl. Spec. Mstr. Nov. 10, 2021) (stating that "counsel are forewarned to take care in litigating HPV cases" and that fees might be denied for future cases that "trod the same ground but without any new and far more reliable scientific or medical evidence to support the claim.").  However, as petitioner stresses, this case was filed back in 2019.  Based on my review of the specific expert opinions provided in this case, while they have clear shortcomings and do not preponderantly support petitioner's claim, they do at a minimum present more than a mere scintilla of evidence supporting general vaccine causation with respect to petitioner's alleged POTS.

---

[2] To the extent the Rule 5 order could potentially be treated as a time at which reasonable basis dissipated in this case, petitioner dismissed the case promptly thereafter, rendering that question moot.

[3] Specifically, respondent cites the following dismissals that predate the filing of this case:  *McKown v. Sec'y of Heath & Human Servs.*, No. 15-1451V, 2019 WL 4072113 (Fed. Cl. Spec. Mstr. July 15, 2019); *Yalacki v. Sec'y of Health & Human Servs.*, No. 14-278V, 2019 WL 1061429 (Fed. Cl. Spec. Mstr. Jan. 31, 2019), *mot rev. den'd*, 146 Fed. Cl. 80 (2019); *Combs v. Sec'y of Health & Human Servs.*, No. 14-878V, 2018 WL 1581672 (Fed. Cl. Spec. Mstr. Feb. 15, 2018); *L.A.M. v. Sec'y of Health & Human Servs.*, No. 11-852V, 2017 WL 527576 (Fed. Cl. Spec. Mstr. Jan. 31, 2017); *Turkopolis v. Sec'y of Health & Human Servs.*, No. 10-351V, 2014 WL 2872215 (Fed. Cl. Spec. Mstr. May 30, 2014); *see also Otto v. Sec'y of Health & Human Servs.*, No. 16-1144V, 2020 WL 4719285 (Fed. Cl. Spec Mstr. June 17, 2020).  Petitioner is correct that attorneys' fees and costs were awarded in all of these cases*.  See McKown*, 2019 WL 7604714 (Fed. Cl. Spec. Mstr. Dec. 18, 2019); *Yalacki,* 2020 WL 5049394 (Fed. Cl. Spec. Mstr. Aug. 12, 2020); *Combs*, 2018 WL 2772218 (Fed. Cl. Spec. Mstr. Apr. 23, 2018); *L.A.M.*, 2017 WL 767710 (Fed. Cl. Spec. Mstr. Feb. 28, 2017); *Turkopolis,* 2015 WL 393343 (Fed. Cl. Jan. 9, 2015); *Otto*, 2020 WL 5031956 (Fed. Cl. Spec. Mstr. July 24, 2020).

7

Respondent also raises several issues with respect to petitioner's own medical history and whether it is compatible with vaccine-causation. While respondent is correct that petitioner has a complicated and potentially confounding history, petitioner's medical records include a clear throughline of suspicion of POTS by her treating physicians culminating with a formal diagnosis of POTS by a cardiologist following a tilt table test that was interpreted as positive for the condition. (Ex. 12.) Even with other of petitioner's medical providers suggesting alternative explanations for her symptoms (including psychological), those opinions have to be weighed against the cardiologist's opinion. They do not automatically negate the fact that petitioner actually carried a diagnosis of POTS from an appropriate specialist following appropriate objective testing. Respondent finds the lack of complete psychological records particularly concerning; however, even if additional psychological treatment records were compelling with respect to other contributors to petitioner's overall history, records relating to treatment from a different discipline still would not constitute direct refutation of the treating cardiologist's assessment. In other words, there is clear objective evidence of POTS in petitioner's medical records regardless of whether it is ultimately the best explanation for petitioner's history.

Respondent also suggests the onset of the relevant symptoms long predated the vaccination at issue. (ECF No. 76, p. 18.) However, petitioner's expert regarding autonomic neurology, Dr. Miglis, addressed this question and specifically opined after review of petitioner's records, including her pre-vaccination state of health, that petitioner's pre-vaccination symptoms are distinguishable, and that the first occurrence of autonomic symptoms occurred on February 16, 2017, approximately two months post-vaccination. (Ex. 39, pp. 8, 12.) He further explained that in his opinion this time frame is consistent with the relevant medical literature and with his proposed autoimmune mechanism of injury. (*Id.* at 12.) Although Dr. Miglis's expert opinion could be fairly subject to challenge and was not persuasive overall when addressing petitioner's allegations under a preponderant standard, this does not mean that it is devoid of any evidentiary value.

Obviously, this case was ultimately dismissed. Accordingly, none of this is to suggest that there was any meaningful chance that the above-discussed evidence would have carried the day under preponderant evidence standard. However, it does surpass the much lower threshold of "more than a mere scintilla of evidence." In light of all of this, petitioner has demonstrated a reasonable basis for the filing of her petition.

## VI.     Amount of the Award

The Federal Circuit has approved a lodestar approach to determine reasonable attorneys' fees and costs under the Vaccine Act. *Avera v. Sec'y of Health and Human Servs.*, 515 F.3d 1343, 1347 (Fed. Cir. 2008). This is a two-step process. *Id.* at 1347-48. First, a court determines an "initial estimate . . . by 'multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate.'" *Id.* (quoting *Blum v. Stenson*, 465 U.S. 886, 888 (1984)). Second, the court may make an upward

or downward departure from the initial calculation of the fee award based on specific findings. *Id.* at 1348. Special Masters have "wide latitude in determining the reasonableness of both attorneys' fees and costs." *Hines v. Sec'y of Health & Human Servs.*, 22 Cl. Ct. 750, 753 (Fed. Cl. 1991.) Moreover, Special Masters are entitled to rely on their own experience and understanding of the issues raised. *Wasson v. Sec'y of Health & Human Servs.*, 24 Cl. Ct. 482, 483 (Fed. Cl. 1991), *aff'd in relevant part,* 988 F.2d 131 (Fed. Cir. 1993) (per curiam).

Counsel's billing records reflect the following hourly rates for Mr. Green: $425 for work performed in 2019; $435 for work performed in 2020; $440 for work performed in 2021; and $445 for work performed in 2022. (ECF No. 75-2.) However, consistent with prior awards, I conclude that reasonable hourly rates are as follows: $390 for work performed in 2019; $405 per hour for work performed in 2020; $420 per hour for work performed in 2021; and $440 per hour for work performed in 2022. *See Flores v. Sec'y of Health & Human Servs.*, No. 19-818V, slip op. (Fed. Cl. Spec. Mstr. Apr. 22, 2022); *Silva v. Sec'y of Health & Human Servs.*, No. 18-1887V, Slip Op. (Fed. Cl. Spec. Mstr. Jan 21, 2021); *Roeder v. Sec'y of Health & Human Servs.*, No. 19-1897V, Slip Op. (Fed. Cl. Spec. Mstr. Jan. 31, 2023). By my tally Mr. Green billed 40 hours in 2019, resulting in a reduction of $1,400.00. He billed 32.9 hours in 2020, resulting in a reduction of $987.00. He billed 25.6 hours at his full rate in 2021 and 13.7 at a reduced rate of $220 per hour for paralegal work. The reduction of the full rate for 2021 amounts to $512.00. I also further reduce the rate for paralegal work to $172 per hour, resulting in a reduction of $657.60. *Accord Flores, supra*. Additionally, counsel billed 1.1 hours of travel time at his full hourly rate in 2019, which I will allow at half-rate, resulting in a reduction of $214.50. *Gruber v. Sec'y of Health & Human Servs.*, 91 Fed. Cl. 773, 777-78 (2010). The total reduction due to these rate adjustments is $3,770.50.

Upon my review, the number of hours billed are reasonable. The requested costs are also reasonable and sufficiently documented.

### VII. Conclusion

For the reasons set forth above, petitioner established a reasonable basis for the initial filing of her petition as required for an award for attorneys' fees and costs. Accordingly, an award for attorney's fees and costs is GRANTED. However, attorneys' fees and costs are awarded in the reduced amount of $62,739.50 for all the reasons discussed above.

**Accordingly, I award a total of $62,739.50 as a lump sum in the form of a check payable to petitioner and his counsel, Paul Adrian Green, Esq.**

The clerk of the court shall enter judgment in accordance herewith.[4]

---

[4] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.

**IT IS SO ORDERED.**

**s/Daniel T. Horner**
Daniel T. Horner
Special Master
